UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAWRENCE FREESWICK,

     Plaintiff,

v.                                                Case No.:  2:20-cv-247-JES-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lawrence Freeswick filed a Complaint on April 9, 2020.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying his claim for a period of disability,
disability insurance benefits, and supplemental security income.  The Commissioner
filed the transcript of the administrative proceedings (hereinafter referred to as "Tr."
followed by the appropriate page number), and the parties filed a joint memorandum
detailing their respective positions.  (Doc. 22).  For the reasons set forth herein, the
Undersigned recommends that the decision of the Commissioner be **AFFIRMED**
pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe,

making the claimant unable to do his previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20

C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.     Procedural History

Plaintiff applied for a period of disability, disability insurance benefits, and

supplemental security income benefits on April 1, 2016, alleging a disability onset

date of October 2, 2015.  (Tr. at 124-25, 168-69, 257-58, 261-63).[1]  Plaintiff's claim

was initially denied on October 7, 2016, and again upon reconsideration on February

1, 2017.  (*Id.* at 15, 170, 177, 185).  On August 14, 2018, Administrative Law Judge

("ALJ") Joseph Booth, III held a hearing that Plaintiff and his attorney attended.

(*Id.* at 40-85).  The ALJ issued an unfavorable decision on January 2, 2019.  (*Id.* at

12-33).  The Appeals Council subsequently denied Plaintiff's request for review on

February 14, 2020.  (*Id.* at 1).  Plaintiff filed his Complaint in this Court on April 9,

2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and
symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules
Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18,
2017).  The new regulations, however, do not apply in Plaintiff's case because
Plaintiff filed his claim before March 27, 2017.

### III.        Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his or her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 2, 2015.  (Tr. at 17).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the left knee; degenerative joint disease of the right shoulder; asthma/COPD; tinnitus; status post traumatic brain injury with residual effects; history of syncope; headaches; ETOH abuse; affective disorder; and personality disorder (20 [C.F.R. §§] 404.1520(c) and 416.920(c))."  (*Id.* at 17-18).  The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R. §] Part 404, Subpart

P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 916.926)."  (*Id.* at 18).

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that he could frequently climb ramps and stairs, but only occasionally climb step ladders up to four vertical feet in height, with no climbing of higher ladders, or of ropes or scaffolds of any height.  The claimant could frequently balance, stoop, kneel, and crouch, but could only occasionally crawl.  He could frequently reach overhead bilaterally and frequently handle, finger, and feel bilaterally. The claimant could have occasional exposure to wetness, humidity, vibration, and atmospheric conditions. However, he should have no exposure to moving mechanical parts and high, exposed places.  The claimant can frequently hear, with exposure up to and including moderate noise.  He can have frequent interactions with supervisors, coworkers, and the public.  The claimant is limited to unskilled work, as defined by SSR 83-10, no production pace work on assembly lines, and only occasional changes to the manner and method of performing the assigned work.

(*Id.* at 21).

The ALJ determined Plaintiff could not perform any of his past relevant work, citing 20 [C.F.R. §§] 404.1565 and 416.965.  (*Id.* at 31).  "Considering the claimant's age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569, 404.1569a, 404.969, and 416.969a)."  (*Id.*). Accordingly, the ALJ found that "[t]he claimant has not been under a disability, as

defined in the Social Security Act, from October 2, 2015, through the date of this

decision (20 [C.F.R. §] 404.1520(g) and 416.920(g))." (*Id.* at 32).

## IV.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla—i.e., the evidence must do more than merely create

a suspicion of the existence of a fact and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that "the evidence preponderates

against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district

court must view the evidence as a whole, taking into account evidence favorable as

well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; accord *Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises three issues.  As stated by the parties, the issues are:

1.   Whether the ALJ properly determined if the Plaintiff's impairments meet the severity requirements listed of Listing 3.02(A);

2.   Whether the ALJ's RFC improperly failed to include occasional pushing and pulling limitations with the right upper extremity in the RFC assesment [sic] and in the hypothetical question to the [Vocational Expert ("VE")]; and

3.   Whether the ALJ properly accounted for the moderate limitations in remembering, understanding, and applying information in the RFC assessment and in the hypothetical question to the VE.

(Doc. 22 at 13, 22, 29).  The Undersigned addresses each argument in turn below.

**A.      Substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet the requirements under Listing 3.02(A).**

Plaintiff first argues that "[t]he ALJ improperly and conclusively stated that the Plaintiff's impairments do not meet the requirements of Listing 3.02(A)" because there is "[s]ubstantial evidence in the record, which the ALJ failed to address in his decision, [that] indicates that the Plaintiff's impairments meet the requirements." (*Id.* at 13 (emphasis omitted)).  In support, Plaintiff argues that to meet the requirements under Listing 3.02(A), a male, 20 years or older must (1) have a diagnosis of chronic obstructive pulmonary disease and (2) have a "FEV1 value" –

which evaluates Plaintiff's respiratory disorder – of 1.75 or less if he is between 68.5 and 70.75 inches tall or of 1.60 or less if he is 66 to 68.50 inches tall.  (*Id.* (citing 20 C.F.R. § Pt. 404, Subpt. P. App. 1, § 3.02(A); 81 Fed. Reg 37138, 37146 (June 9, 2016))).

Plaintiff argues that his spirometry testing shows a FEV1 value of "1.74 pre-bronchodilator and 1.63 post bronchodilator on the best effort."  (*Id.* at 14 (citing Tr. at 457)).  Plaintiff maintains that because he is "between 68.5 and 70.75 inches or even taller, . . . these values satisfy the requirements of Listing 3.02(A)."  (*Id.* (internal citations omitted) (citing (Tr. at 430, 435, 454, 501, 506, 545, 565, 578, 600, 626, 647, 659, 667, 685, 705, 724, 742, 743, 751, 753)).  Additionally, Plaintiff maintains that the ALJ's finding that Plaintiff's height is 68 inches is inconsistent with the record, which "repeatedly document[s] the Plaintiff's height at 71 or 72 inches."  (*Id.* (citing Tr. at 430, 435, 501, 506, 545, 565, 578, 600, 626, 647, 659, 667, 685, 705, 724, 742, 743, 751, 753, 803, 807)).  Accordingly, Plaintiff contends that "[o]ne odd note in the record that the Plaintiff's height is [68 inches] . . . does not provide substantial evidence to support a conclusion that the Plaintiff is [68 inches]."  (*Id.* at 14-15).  Moreover, Plaintiff maintains that State Agency physician Robert Pyle's opinion does not support the ALJ's conclusion regarding the Listing because the opinion relied on the old regulations, rather than the new regulations effective October 7, 2016.  (*Id.* at 16 (citations omitted)).  Thus, Plaintiff essentially argues that the ALJ erred in conclusively finding "that the Plaintiff's COPD and asthma do not meet or medically equal Listing 3.02" because the ALJ did not address the

discrepancies related to Plaintiff's height or otherwise reference the details of the spirometry test.  (*See id.* at 15-16 (citation omitted)).

In response, Defendant notes that Plaintiff bears the burden of proving that his impairments meet a Listing by showing that Plaintiff "meet[s] all of the specified medical criteria."  (*Id.* at 16-17 (quotation omitted)).  Defendant essentially argues that Plaintiff failed to show that the ALJ erred in finding that Plaintiff does not meet Listing 3.02(A) because Plaintiff's FEV1 value was 1.74 and his height is 68 inches. (*See id.* at 17-18).  In support, Defendant contends that "[t]he pulmonary function assessment form, consistent with Listing 3.02's requirements, dictates that the height included on the spirometry report must be measured 'without shoes.'" (*Id.* at 18 (citing Tr. at 459) (emphasis omitted)).  Accordingly, Defendant argues that because the spirometry report notes that Plaintiff's height without shoes is 68 inches and his FEV1 value was greater than 1.60, substantial evidence supports the ALJ's finding that Plaintiff does not meet the requirements of Listing 3.01(A).  (*Id.*).

Additionally, Defendant contests Plaintiff's argument that the record shows Plaintiff's height is at least 68.5 inches, arguing that the pertinent question is not whether evidence supports a finding that the Listing was met but rather whether substantial evidence supports the ALJ's determination that the Listing was not met. (*Id.* at 18-19).  Defendant contends that the records cited by Plaintiff do not state whether Plaintiff was measured without shoes on, as required by the Listing, or whether Plaintiff was even measured at all.  (*Id.* at 19).  By contrast, Defendant argues that because the pulmonary function assessment form reminds the

administrator to measure the claimant without shoes, this "strongly suggests" that Plaintiff was measured without shoes.  (*Id.*).  Thus, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff does not meet the criteria of Listing 3.02(A).  (*Id.*).

Finally, Defendant maintains that Plaintiff's argument that the ALJ's finding was conclusory lacks merit.  (*Id.* at 20).  In support, Defendant argues that the ALJ need not recite the evidence upon which he relied in determining whether a claimant meets a Listing and may even make such a finding implicitly.  (*See id.* at 20-22 (citations omitted)).  Defendant contends that by finding that Plaintiff's FEV1 value did not meet the criteria under the Listing, the ALJ implicitly found that Plaintiff was 68 inches, and such a finding is supported by substantial evidence—*i.e.*, the pulmonary function assessment form.  (*Id.* at 20).

In sum, Defendant argues that substantial evidence supports the ALJ's explicit finding that Plaintiff does not meet the criteria of Listing 3.01(A) and the ALJ's implicit finding that Plaintiff is 68 inches without shoes and the Court should, therefore, affirm the decision.  (*Id.*).

At step three, to meet the requirements of a Listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).  The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a

plaintiff is presumptively determined to be disabled and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that he meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

The pertinent Listing at issue here, 3.02(A), requires a plaintiff to provide evidence of "chronic obstructive pulmonary disease due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 3.02(A). Table I-A requires a finding of disability for a male 20 years old or older with a FEV1 value of 1.75 or less if he is 68.5 to 70.75 inches tall or a FEV1 value 1.60 or less if he is 66 to 68.50 inches tall. 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 3.02(A), Table I-A.

Here, the Undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff does not meet the criteria of Listing 3.02(A). (*See* Tr. at 18). It is undisputed that Plaintiff has a chronic obstructive pulmonary disease and that his FEV1 value was 1.74 pre-bronchodilator and 1.63 post-bronchodilator. (*See* Tr. at 457). The only issue, therefore, is whether the FEV1 is less than the value specified in Table I-A, which turns on the issue of Plaintiff's height. *See* 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, § 3.02(A), Table I-A.

"An ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record." *Bellew v. Comm'r of Soc. Sec.*, 605 F. App'x. 917, 920 (11th Cir. 2015) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). Additionally, an ALJ is not required to recite mechanically the evidence leading to the final determination as to whether a plaintiff meets a Listing. *Id.*

Here, the ALJ explicitly found that Plaintiff's impairments, when considered singly or in combination, did not meet or equal the severity requirements of any listed impairment nor did the medical records provide the required elements to meet or medically equal a listing, including Listing 3.02(A). (Tr. at 18-19). Specifically, the ALJ stated that Plaintiff "does not show a chronic respiratory disorder due to any cause with (A) FEVl values that are less than or equal to the value in Table I-A or I-B." (Tr. at 19). Implicit in such a determination is a finding that Plaintiff is less than 68.5 inches tall. (*See id.*). This finding is supported by substantial evidence because the spirometry report lists Plaintiff's height at 68 inches. (*Id*. at 457). Because an

ALJ may make implicit findings that a claimant does not meet the criteria of a Listing and need not recite the evidence leading to that determination, *Bellew v. Comm'r of Soc. Sec.*, 605 F. App'x. 917, 920 (11th Cir. 2015) (citation omitted), the Undersigned finds that the ALJ properly implicitly determined that Plaintiff's height without shoes is 68 inches, (*see* Tr. at 19).  Additionally, such a determination is supported by substantial evidence of record.  (*Id.* at 457).  Accordingly, the Undersigned finds that the ALJ did not err in implicitly determining that Plaintiff's height without shoes is 68 inches and explicitly finding that Plaintiff did not meet or medically equal a Listing.

The Undersigned further notes that the mere fact that other evidence of record supports a different conclusion does not require remand.  Indeed, it is the ALJ's job to evaluate and weigh evidence and resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Accordingly, despite the evidence in the record that the ALJ could have relied on to determine that Plaintiff's height was 68.5 inches or taller, the Undersigned finds that substantial evidence supports the ALJ's implicit

determination that Plaintiff's height is 68 inches.  (*See* Tr. at 457).  Accordingly, the Undersigned recommends that the decision of the ALJ be affirmed on this issue.

**B.    The ALJ did not err in failing to include a limitation on Plaintiff's ability to push and pull with the right upper extremity in the RFC and in the hypothetical posed to the VE.**

Next, Plaintiff argues that the ALJ erred in failing to include a limitation on Plaintiff's ability to push and pull with the right upper extremity in either Plaintiff's RFC or the hypothetical presented to the VE.  (Doc. 22 at 22-23).  In support, Plaintiff notes that the ALJ gave only partial weight to the opinion of State Agency physician, Robert Plye – which included a limitation that Plaintiff can perform pushing and pulling with the right upper extremity only occasionally – because the ALJ determined that "Dr. Plye 'did not fully account for the claimant's degenerative joint disease in his right shoulder and the resultant limitations with the use of his right upper extremity.'"  (*Id.* at 23 (quoting Tr. at 29)).  Thus, Plaintiff maintains that the ALJ erred by failing to include this limitation in either the RFC or the hypothetical to the VE – or otherwise explain why he did not include it – despite "suggest[ing] that the Plaintiff warrants greater limitations due to his shoulder problems than identified by Dr. Pyle."  (*Id.* at 23-24).

Moreover, Plaintiff maintains this error is not harmless because "the ability to perform push and pull is one of the primary strength activities defining a level of work."  (*Id.* at 24 (citations omitted)).  In support, Plaintiff notes that "an inability to push or pull only occasionally would prevent light work" and that the DOT descriptions of all three jobs that the ALJ found that Plaintiff could perform state that

the "jobs may involve significant pushing and/or pulling." (*Id.* (citations omitted)). Accordingly, Plaintiff contends that "the ALJ should have included this limitation in the hypothetical question to the VE to determine whether occasional pushing and pulling would preclude these jobs." (*Id.*)

In response, Defendant argues that Plaintiff's argument lacks merit because even if the ALJ had afforded Dr. Plye's opinion great weight, which he did not, "the ALJ was not required to adopt the opinion verbatim." (*Id.* at 24). Additionally, Defendant maintains that the ALJ was not required "to weigh each of Dr. Pyle's opined limitations individually," but rather to provide a rationale for the general weight given. (*Id.* at 26 (citations omitted)). Defendant contends that the ALJ provided "an extensive rationale for concluding that Dr. Plye's opinion was entitled 'partial weight,'" including that the opinion was consistent with the evidence of record, that Dr. Plye did not have a treating physician relationship with Plaintiff, and that Dr. Plye did not have the opportunity to review the complete record, observe Plaintiff during the hearing, or listen to Plaintiff's testimony. (*Id.*). Furthermore, Defendant argues that substantial evidence supports the ALJ's rejection of the pushing and pulling limitation because the ALJ found that "despite diagnostic imaging revealing cervical spine and right shoulder impairment, . . . Plaintiff retained significant ability to utilize his right upper extremity," supported by specific citations to the record. (*Id.* at 27-28 (citations omitted)). Additionally, Defendant notes that because substantial evidence supports the ALJ's finding that Plaintiff was limited to light work and only frequent overhead reaching, handling, fingering and feeling, any

error in failing to discuss Dr. Plye's limitation would be harmless. (*Id.* at 28 (citations omitted)). Finally, Defendant contends that the ALJ's statement that Dr. Plye's opinion did not account for all the limitations may have related to the additional bilateral upper extremity limitations determined by the ALJ but not opined about by Dr. Plye. (*Id.* at 28-29 (citations omitted)).

In sum, Defendant argues that the ALJ did not have to adopt all of Dr. Plye's findings, or specifically weigh any individual finding, and that the ALJ's implicit rejection of Dr. Plye's limitation is supported by substantial evidence. (*Id.* at 28-29).

An RFC is the most a claimant can still do despite the physical and mental limitations of his impairments. *See* 20 C.F.R. § 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.946(c). The ALJ must consider all the claimant's medically determinable impairments, even those not designated as severe. 20 C.F.R. § 416.945(a)(2).

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). While an ALJ must give a treating physician special deference, there is no such requirement for non-treating sources. *Barnhart*, 357 F.3d at 1240-41. Instead, the ALJ's RFC determination must merely

be supported by substantial evidence.  42 U.S.C. § 405(g).  Additionally, an "ALJ

may reject any medical opinion if the evidence supports a contrary finding."  *Lacina*

*v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz*

*v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Finally, incorrect application of the regulations will result in harmless error if

a correct application of the regulations would not contradict the ALJ's ultimate

findings.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir.

2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v.*

*Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted

unless an error shows "unfairness" or "clear prejudice").

Here, the ALJ did precisely as required.  Specifically, the ALJ determined

Plaintiff's RFC after considering the medical opinions and stating with particularity

the weight given to each and the reasons thereto.  (*See* Tr. at 29-30).  As to Dr. Plye's

opinion, the ALJ determined that the opinion was entitled to partial weight because

(1) it applied the new standards for Evaluating Mental Disorders rather than the old

standards, which applied to Plaintiff's case and (2) while the opinion was generally

consistent with Plaintiff's treatment record, Dr. Plye did not fully account for the

Plaintiff's degenerative joint disease in his right shoulder and the resultant limitations

with the use of his right upper extremity.  (*Id.* at 29).  The ALJ also noted that Dr.

Plye did not have a treating or examining relationship with Plaintiff, did not have the

opportunity to review Plaintiff's complete medical evidence, did not personally

observe Plaintiff at an administrative hearing, and did not listen to Plaintiff's

testimony.  (*Id.*).  Accordingly, the Undersigned finds that the ALJ properly discharged his duty to state the weight given to Dr. Plye's opinion and reasons for doing so.  (*See id.*).

Moreover, the Undersigned finds that Plaintiff's argument that the ALJ erred by not including Dr. Plye's pushing and pulling limitation lacks merit.  (*See* Doc. 22 at 22-24).  Indeed, even had the ALJ given great weight to the opinion, the ALJ need not adopt the findings verbatim if he provides a reason for rejecting the limitation. *See Ramos v. Comm'r of Soc. Sec.*, No. 2:19-cv-886-FtM-MRM, 2021 WL 960688, at *5 (M.D. Fla. Mar. 15, 2021); *see also Bailey v. Comm'r of Soc. Sec.*, No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2425303, at *4 (M.D. Fla. May 23, 2019), *report and recommendation adopted,* No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2423422 (M.D. Fla. June 10, 2019).  Here, the Undersigned finds that the ALJ sufficiently addressed the recommended limitation on pushing and pulling for two reasons.  First, the ALJ gave the decision only partial weight and as such was not required to adopt the opinions.  (*Id.*).  Second, the ALJ impliedly explained why he was not adopting the limitation on pushing and pulling with the right upper extremity.  (*Id.*).  Specifically, the ALJ determined that Dr. Plye "did not fully account for the claimant's degenerative joint disease in his right shoulder and the resultant limitations with the use of his right upper extremity."  (*Id*).  Consistent with that statement, the ALJ found Plaintiff limited to "frequently reach[ing] overhead bilaterally and frequently

handl[ing], finger[ing], and feel[ing] bilaterally," despite Dr. Plye finding that Plaintiff was unlimited in handling, fingering, and feeling.  (*Id.*).

In sum, the Undersigned finds that the ALJ did not err in impliedly rejecting Dr. Plye's opinion that Plaintiff is limited in pushing and pulling with the upper right extremity because (1) the ALJ stated that he gave Dr. Plye's opinion partial weight and (2) the ALJ ultimately determined an RFC that was not inconsistent with his reasons for giving Dr. Plye's opinion partial weight.

Moreover, the Undersigned finds that even if the ALJ erred by not specifically articulating why he rejected Dr. Plye's opinion that Plaintiff is limited in pushing and pulling with the right upper extremity, any such error is harmless because substantial evidence supports the ALJ's RFC.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) (concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).  Specifically, as the ALJ cited, in September 2016, Dr. Ayman Gebrail found that Plaintiff had full range of motion in the shoulders bilaterally, only mild muscle atrophy, and full strength in both his upper and lower extremities, and, although not relied on by the ALJ, Dr. Gebrail found that Plaintiff's range of motion in his right arm is intact.  (Tr. at 24 (citing Tr. at 448-49)).  Likewise, the ALJ noted that in September 2016, Kathy Cabe, LPB found that Plaintiff had full grip strength in his hand.  (*Id.* at 24 (citing Tr. at 497)).  Additionally, the ALJ cited to Plaintiff's records in May 2018 in which Plaintiff "maintained full strength with bilateral wrist extension, hand grip, and thumb and

finger abduction." (*Id.* at 26 (citing Tr. at 547)).  As a result, because the ALJ cited evidence of record consistent with his ultimate RFC, the Undersigned finds that any error by the ALJ would not contradict his ultimate findings, and as such, his decision is not due to be remanded.  *See Denomme*, 518 F. App'x at 877-78 (citing *Diorio*, 721 F.2d at 728).

Finally, to the extent Plaintiff attempted to argue that the ALJ erred by not including a limitation on pushing and pulling in the hypothetical presented to the VE, the Undersigned finds the argument lacks merit.  "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a VE to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  If the ALJ decides to use a VE, for the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  However, an ALJ is "not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Because the Undersigned finds that the ALJ did not err by not including a limitation on Plaintiff's ability to push or pull with his right upper extremity, the Undersigned likewise finds that the ALJ was not obligated to include such a limitation in his hypothetical to the VE.  Indeed, the ALJ was not required to include limitations that he found unsupported by the record.  *See Forrester*, 455 F. App'x at 903.  To the extent Plaintiff disagrees with the ALJ's interpretation of the evidence, that is not a sufficient basis for remand.  *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).  Accordingly, the Undersigned recommends that the decision of the ALJ be affirmed on this issue.

## C. The ALJ implicitly accounted for Plaintiff's moderate limitation in remembering, understanding, and applying information in the RFC and the hypothetical posed to the VE.

Lastly, Plaintiff contends that the ALJ erred in failing to account for the finding that Plaintiff has a moderate limitation in remembering, understanding, and applying information in either his RFC or the hypothetical question posed to the VE, either implicitly or explicitly.  (Doc. 22 at 29).  In support, Plaintiff essentially maintains that the limitations on interaction with supervisors, coworkers, and the public, the limitation as to the pace of production, and the limitation as to the changes in manner and method of performing the assigned work, do not account, explicitly or implicitly, for Plaintiff's moderate limitation in remembering, understanding, and applying information.  (*See id.* at 30).

Similarly, Plaintiff argues that limiting Plaintiff to unskilled work was insufficient to account for the moderate limitation in remembering, understanding,

and applying information because the ALJ did not (1) "explicitly include[] the limitation in understanding, remembering, or applying information in the hypothetical question to the VE;" (2) " implicitly include[] this limitation in the hypothetical question to the VE;" or (3) "indicate[] that the Plaintiff's ability to work was otherwise unaffected by this limitation." (*Id.* at 30-31). Moreover, Plaintiff contends that the limitation to unskilled work does not account for Plaintiff's memory problems because unskilled work usually requires that a person learn to do them in 30 days or less, which is distinct from an ability to remember to do certain duties or follow certain instructions for the day. (*Id.* at 31-32).

To support his argument, Plaintiff cites the opinions of State Agency psychological consultants, Drs. Noles and McCarty, both of which clarified that "Plaintiff appears to be capable of remembering locations and simple instructions, but might have difficulty remembering detailed instructions." (*Id.* at 32 (citing Tr. at 141, 162)). Specifically, Plaintiff notes that although the ALJ gave only partial weight to these opinions, he appeared to find Plaintiff's limitations greater than those found by Dr. McCarty, who found the limitations to be only mild. (*Id.* at 32-33 (citing Tr. at 20, 135)). Plaintiff maintains that the finding that Plaintiff had a moderate limitation "further suggests that the Plaintiff's ability to perform work is affected by [a] moderate limitation[] in this area." (*Id.* at 32).

In sum, Plaintiff contends that the ALJ erred by failing to explicitly or implicitly include a limitation as to Plaintiff's moderate limitation in remembering, understanding, and applying information in either the RFC or the hypothetical

question and that the limitation of "unskilled work" is insufficient to account for these limitations.  (*Id.*).

In response, Defendant maintains that the ALJ properly accounted for the finding that Plaintiff had a moderate limitation in remembering, understanding, and applying information in both the RFC and the hypothetical question.  (*Id.* at 33). Defendant notes that the ALJ properly used the special psychiatric review technique ("PRTF"), "rated Plaintiff's functioning in the four broad functional areas, noting Plaintiff had [a] moderate restriction in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, and only mild limitation in the remaining two domains," and properly used the ratings in assessing the severity of Plaintiff's impairments at steps two and three of the process.  (*Id.* at 33-34 (citations omitted)).  Additionally, Defendant maintains that because the ALJ found that Plaintiff's impairments did not meet or equal one of the Listings, the ALJ "translated his ratings into a more detailed assessment of Plaintiff's mental limitations, as reflected in his RFC finding and hypothetical question."  (*Id.* at 34 (citing Tr. at 22, 475)).  Specifically, Defendant contends that the ALJ limited Plaintiff to "unskilled work[;] . . . no production pace work on assembly lines; only occasional changes to the manner and method of performing the assigned work; and frequent interactions with supervisors, coworkers, and the public."  (*Id.* at 35 (citing Tr. at 21)).

Additionally, Defendant maintains that under Eleventh Circuit precedent "an ALJ may account for the PRT[F] ratings by means other than an explicit recitation

of the ratings." (*Id.* (collecting cases)).  Defendant appears to argue that the ALJ's hypothetical question, therefore, accounted for the moderate limitation in understanding, remembering, or applying information because "the medical and other evidence support the ALJ's RFC finding, which implicitly accounts for his PRT[F] ratings." (*See id.* at 36).  In support, Defendant cites Plaintiff's hearing testimony in which Plaintiff "did not allege significant issues in this area," a pre-hearing function report in which Plaintiff "stated his ability to follow written instructions was 'good' and that his ability to follow spoken instructions was 'good if notes are taken,'" that Plaintiff "reported he did not require reminders to take care of personal needs, groom, go places, or take his medication," and that his final treatment notes show that he is remodeling his kitchen.  (*Id.* at 36-37 (citing Tr. at 20, 42-84, 296-97, 300)).  Defendant asserts that the objective medical evidence likewise does not reflect significant limitations in this area, citing several examples.  (*Id.* at 37 (citing Tr. at 20, 27, 411, 463, 464, 622, 799, 807)).  Thus, Defendant maintains that the evidence of record supports the ALJ's RFC and VE hypothetical.  (*See id.* at 27-38).

SSR 96-8p states, in relevant part:

> 4.   The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities *on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of . . . 20 [C.F.R. §] 416.945 . . . .*
>
> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires

adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C* of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses an individual's abilities to perform . . . and mental [activities] (e.g., understanding and remembering instructions and responding appropriately to supervision). . . .

As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions. . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96-8p (emphasis added).

Thus, although the PRTF limitations are not the RFC, they must still be considered in conducting a "more detailed assessment" of the four criteria listed in the PRTF when formulating a claimant's RFC. SSR 96-8p; 20 C.F.R. § 404.1520a(c)(3); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.

2001) (holding that while "the PRT[F] and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter" (citations omitted)).

The Undersigned notes that 20 C.F.R. § 404.1520a(c)(3), establishing the four functional areas an ALJ must assess, was revised in January 2017.[2]  While cases examining moderate limitations in the new functional area of understanding, remembering, and applying information are scant, the Undersigned finds persuasive the reasoning applied in cases examining similar issues under the former version of the regulation.

In *Winschel v. Commissioner of Social Security*, the Eleventh Circuit found an ALJ to have erred because while the claimant had "a moderate limitation in maintaining concentration, persistence, and pace," the ALJ failed to indicate "that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical [to the VE]."  631 F.3d 1176, 1181 (11th Cir. 2011).  The Court explained "the ALJ should have explicitly included the limitation in his hypothetical to the [VE]."  *Id*.  However, the Court also noted that in *certain circumstances* an ALJ may properly find that the medical evidence of record supports only an RFC

---

[2]  The revision became effective January 17, 2017.  The four areas of functioning were previously:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition.

limitation of unskilled work despite a moderate limitation in concentration, persistence, or pace. *See id.* (citations omitted).

Importantly, the Eleventh Circuit has recognized since its decision in *Winschel*, that limiting an individual to simple, unskilled work, when medical evidence demonstrates the ability to perform such work, sufficiently accounts for a moderate limitation in concentration, persistence, or pace. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace."); *see also Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform.").

Further, an ALJ's RFC determination and hypothetical questions posed to a VE can sufficiently account for a moderate limitation in concentration, persistence, and pace, if the medical evidence demonstrates that the claimant can perform those tasks despite a limitation in concentration, persistence, and pace. *Id.*; *see also Reina v. Comm'r of Soc. Sec.*, 6: 10-CV-1643-ORL-GJK, 2012 WL 882516, at *10 (M.D. Fla. Mar. 15, 2012) (citation omitted) ("The ALJ's hypothetical adequately accounted for Claimant's limitations in concentration, persistence or pace because the medical

record indicates that Claimant can perform simple, routine tasks notwithstanding her limitations in these areas.").

Here, the Undersigned finds that the ALJ did not err in failing to include an explicit reference to the moderate limitation in understanding, remembering, and applying information. Even if the ALJ erred by not discussing the mental impairments on a function-by-function assessment or examine Claimant's nonexertional capacity in terms of work-related functions, *see,* SSR 96-8p, this error would be harmless because the ALJ adequately addressed Plaintiff's mental impairments in the RFC narrative, *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (*citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) and concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).

In reaching this conclusion, the Undersigned notes that in the RFC narrative, the ALJ discussed Plaintiff's alleged daily activities and found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (Tr. at 29). Thus, the ALJ concluded that Plaintiff's ability to engage in said activities "undermines the assertion that his symptoms result in disabling functional limitations." (*Id.*). The ALJ continued that:

> [n]onetheless the undersigned has accounted for the claimant's physical and mental conditions and his allegations of worsening problems. . . . The undersigned also finds that secondary to his history of traumatic brain injury with the endorsed residual effects, as well as his

27

> headaches, affective disorder, personality disorder, and
> ETOH abuse, the claimant will only be able to perform
> work within the parameters of mental functioning defined
> in the residual functional capacity.

(*Id.*).

By including language that "claimant will only be able to perform work within the parameters of mental functioning defined in the residual functional capacity" because *inter alia* "his history of traumatic brain injury with the endorsed residual effects," (*see id.*), the ALJ implicitly found that the RFC accounted for Plaintiff's moderate limitation in remembering, understanding, and applying information because Plaintiff's memory problems have consistently been tied to the traumatic brain injury, (*see, e.g.*, *id.* at 275). Moreover, to the extent his limitations have a different cause, the ALJ's statement clarifies that such a cause was also considered. (*See id.* at 29). Thus, the Undersigned finds that the ALJ implicitly accounted for Plaintiff's moderate limitation in remembering, understanding, and applying information in his RFC by clarifying that the RFC included appropriate limitations for Plaintiff's mental impairments. (*See id.*). Such a finding is bolstered by the ALJ's final sentence summarizing his RFC findings:

> [i]n sum, the above residual functional capacity assessment
> is supported by the analyses of the aforementioned medical
> opinions, the objective medical evidence of record, and the
> claimant's testimony and documented subjective reports.
> The claimant has the ability to perform work within the
> parameters of the above residual functional capacity, which
> has been calibrated to accommodate his impairments.

(*Id.* at 31).

Furthermore, even if the presiding United States District Judge were to find that the RFC narrative does not sufficiently show that the ALJ accounted for Plaintiff's limitations, the Undersigned finds that the medical evidence demonstrates that Plaintiff can perform the work described in the RFC given the limitations to "unskilled work" and "only occasional changes to the manner and method of performing the assigned work" despite Plaintiff's moderate limitation in remembering, understanding, and applying information.  (*See id.* at 20-21).  Based on the previously cited portions of the ALJ's decision, it is apparent that the ALJ considered Plaintiff's moderate limitation in remembering, understanding, and applying information and still determined that Plaintiff could perform "unskilled work" so long as there are "only occasional changes to the manner and method of performing the assigned work."  (*See id.* at 21).

Such a finding is supported by the ALJ's analysis of Plaintiff's limitation in remembering, understanding, and applying information.  (*Id.* at 20).  Specifically, the ALJ noted that "despite [Plaintiff's] mental impairments, the claimant retains some of his ability to learn, recall, and use information to perform work activities," that Plaintiff "did not need reminders to take care of his personal needs and grooming, or to go places," that Plaintiff "denied having any barriers to learning and his level of understanding was assessed as 'good' on multiple occasions" in his VA records, and that during Plaintiff's hearing before the ALJ, Plaintiff "was able to understand all questions asked and did not require in-depth explanations."  (*Id.* at 20).  Additionally, although the ALJ was discussing a different limitation, the ALJ also

noted that Plaintiff's "VA records indicate that he had no difficulty reading or understanding written instructions." (*Id.* (citing Tr. at 411)). Finally, Dr. Silver, to whom the ALJ gave partial weight, opined that Plaintiff "would be able to follow instructions and would be able to understand directions, and his sustained attention, though not great, would be adequate for many jobs." (*Id.* at 30 (citing Tr. at 275)). Because the ALJ provided citations indicating that Plaintiff was capable of remembering, understanding, and applying information despite his limitation, the Undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff can perform "unskilled work" with "only occasional changes to the manner and method of performing the assigned work." (*Id.* at 21). Thus, because substantial evidence supports the ALJ's determination that Plaintiff can perform his RFC, the Undersigned finds that the ALJ sufficiently accounted for Plaintiff's moderate limitation in remembering, understanding, and applying information. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017).

Additionally, the Undersigned finds that the hypothetical presented to the VE also implicitly accounted for Plaintiff's moderate limitation in remembering, understanding, and applying information. (*See* Tr. at 80-81). Indeed, the ALJ presented a hypothetical to the VE which included the same limitations that the RFC included—limiting Plaintiff to "frequent interactions with supervisors, coworkers and the public[,] . . . unskilled work, . . . [with n]o production pace work on assembly lines[, and o]ccasional changes to the manner and method of performing the assigned work." (*Id.*). Because the Undersigned finds that these limitations

implicitly account for Plaintiff's moderate limitation in remembering, understanding, and applying information, the ALJ properly posed a hypothetical that "comprise[d] all of the claimant's impairments." *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

In sum, the Undersigned finds that both the RFC and the hypothetical posed to the VE implicitly account for Plaintiff's moderate limitation in remembering, understanding, and applying information.  Accordingly, the Undersigned recommends that the decision of the ALJ be affirmed on this issue.

## VI.   Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds substantial evidence supports the ALJ's decision.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.    The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 16, 2021.

Mac R. McCoy
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties